IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Scott Marshall,<br><br>        Plaintiff,<br>  v.<br><br>AT&T Mobility Services, LLC, and Kent Mathy,<br><br>        Defendants. | C/A. No. 3:17-cv-1577-CMC<br><br>**Opinion and Order** |

Through this action, Plaintiff Scott Marshall ("Plaintiff") seeks recovery from his former employer, AT&T Mobility Services LLC ("AT&T"), for alleged employment discrimination based on "Race Plus Sex" pursuant to 42 U.S.C. § 2000e, *et seq.* ECF. No. 1.[1] The matter is before the court on Defendants' Motion for Summary Judgment, filed June 25, 2018. ECF No. 46. Plaintiff filed his response in opposition on July 19, 2018, after being granted an extension. ECF No. 54. Defendants filed a reply on August 3, 2018. ECF No. 58.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(g), D.S.C., this matter was referred to United States Magistrate Judge Kaymani D. West for pre-trial proceedings and a Report and Recommendation ("Report"). On January 10, 2019, the Magistrate Judge issued a Report recommending Defendants' motion for summary judgment be granted. ECF No. 70. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Plaintiff filed his objections on

---

[1] Plaintiff's Complaint also included a claim of discrimination based on Age and a claim of defamation against both Defendants. As discussed more fully below, he has conceded these claims. ECF No. 21.

February 7, 2019. ECF No. 74. Defendants filed a reply on March 7, 2019. ECF No. 79. This matter is now ripe for resolution.

After conducting a *de novo* review as to the objections made, and considering the record, the applicable law, the Report and Recommendation of the Magistrate Judge, and the parties' objections, the court agrees with the Report's recommendation that Defendants' motion for summary judgment be granted. Accordingly, the court adopts the Report by reference in this Order. For the reasons stated in the Report and as further addressed below, Defendants are entitled to summary judgment on all claims.

**I.  Standard**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The court reviews only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

Summary Judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the district court must "view the evidence in the light

most favorable to the nonmoving party." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (citing *Tolan v. Cotton*, 134 S.Ct. 1861, 1868 (2014) (per curiam)). "Summary Judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Id.* Therefore, the court cannot weigh the evidence or make credibility determinations. *Id.* at 569. The district court may not "credit[] the evidence of the party seeking summary judgment and fail[] properly to acknowledge key evidence offered by the party opposing that motion." *Id.* at 570. However, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

**II. Discussion**

　　*a. Age Discrimination and Defamation Claims*

As noted by the Magistrate Judge, Plaintiff conceded "the evidence forecast during discovery does not support a defamation claim against Mathy or AT&T, or an age discrimination claim against AT&T." ECF No. 54 at 1. Summary judgment as to the age and defamation claims is therefore granted. Further, as the only claim brought against the individual Defendant, Mathy, was defamation, he is hereby dismissed as a party.

　　*b. Race Plus Sex Discrimination Claim*

　　　　*i.* Magistrate Judge's recommendations and Parties' arguments

Plaintiff, a white male, alleges two claims of Title VII discrimination: 1) his termination in the reduction in force/surplus ("RIF/surplus"), and 2) failure to hire for the Cricket Wireless position, both based on a theory of race plus sex discrimination. ECF No. 1-1 at ¶ 18. As to the

3

failure to hire claim, the Magistrate Judge recommends summary judgment because Plaintiff abandoned this claim when his opposition to summary judgment did not address it other than in the recitation of the facts and very briefly in his argument regarding pretext[2]. ECF No. 70 at 12; *see also* ECF No. 54 at 7, 19.

Plaintiff's RIF/surplus claim is more complicated; however, the Magistrate Judge recommends granting summary judgment based on several theories. First, the Report notes there are "serious questions about whether, under the facts of this case, Plaintiff's status as a white male would cause him to be protected under Title VII," as a race plus sex theory may not apply to white males. *Id.* at 17. The Magistrate Judge also concludes Plaintiff has failed to establish a *prima facie* case that his status as a white male motivated his inclusion in the RIF/surplus, and failed to show pretext after AT&T proffered a legitimate, nondiscriminatory reason for his discharge. *Id.* at 18-24.

Plaintiff objects to the Report, arguing there are genuine issues of material fact precluding summary judgment on his race plus sex RIF/surplus claim. ECF No. 74. Plaintiff does not address his failure to hire claim, despite the Report specifically recommending summary judgment based on Plaintiff's abandonment of the claim. He does, however, object to the Magistrate Judge's findings regarding his RIF/surplus claim, arguing "this Court and the Fourth Circuit (at least tacitly) have recognized the viability of a 'race plus sex' or 'sex plus race' claim." *Id.* at 2. Further, Plaintiff contends he has put forth evidence he was satisfactorily performing his job at the

---

[2] Plaintiff argued another employee was hired for the Cricket Wireless position in part due to her "long tenure and familiarity with the region" in which the job was located, but AT&T did not credit Plaintiff's tenure in his "Experience" score in the RIF/surplus. ECF No. 54 at 19.

time of the RIF/surplus, and AT&T's purported reasons for separating "only Plaintiff and three other white male Level 3 Directors in Kent Mathy's region" were pretext for discrimination.[3] *Id.* at 3-7.

In its reply, AT&T points out Plaintiff's objections do not challenge the Magistrate Judge's recommendation on the age, defamation, and failure to hire claims. It argues Plaintiff failed to present specific objections, but instead rehashed his arguments against summary judgment on his RIF/surplus discrimination claim, and thus *de novo* review is not required. ECF No. 79. *Id.* at 3. It further argues that, even under a *de novo* review, the Magistrate Judge's recommendations regarding the "super trait" theory, Plaintiff's performance level, and pretext should be upheld. *Id.* at 7-15.

### ii. Background

Plaintiff is a white male who began employment with AT&T in 1997 and became a Director of Sales (a "Level Three" position) in 2008. ECF No. 1-1 at ¶ 6. On or about May 22, 2016, Plaintiff was notified his employment was being terminated as part of a RIF or surplus. *Id.* at ¶ 9; Pl. Dep. 36-37. At that time, Plaintiff's immediate supervisor was Parker, a black male and the Vice President/General Manager responsible for South Carolina and Georgia. ECF No. 1-1 at ¶ 7. Parker's supervisor at the time was Mathy, a white male and the Regional President for the Southeast region. *Id.*

---

[3] Six Level 3 Directors were selected for the RIF/surplus, but two of those, including a "minority director" not otherwise identified, were hired by AT&T for other positions before their termination. ECF No. 54 at 7.

AT&T determined two of its six Director positions in the South Carolina/Georgia region would be eliminated in the 2016 surplus. One position was vacant and not refilled. The five existing Directors were evaluated and the lowest ranking, Plaintiff, was terminated. ECF No. 46-8. In the ranking process, AT&T directed Parker to utilize each Director's "9 Box" rating[4], 2014 and 2015 Annual Performance reviews, and a "2015 numerical rating[5]." ECF Nos. 46-6, Wood Decl. ¶ 5; 68. These ratings were pre-filled by Human Resources before Parker received the ranking spreadsheet. He was to rate each Director's current performance in four areas: leadership (including subparts for character, leading change, interpersonal skills, personal capability, and focus on results), performance (based on current performance rating), skills, and experience. ECF No. 68 at 6. Parker was provided relevant definitions and considerations for his assessment of the Directors. *Id.*

The Directors' (including Plaintiff's) pre-filled ratings, in which Parker did not have contemporaneous input (at the time of the 2016 RIF/surplus), were as follows:

| Director | 9-box rating | 2014 rating | 2015 rating | 2015 numerical rating |
|---|---|---|---|---|
| Comparator 1 | 2 | Exceeds | Far Exceeds | 5 |
| Comparator 2 | 2 | Exceeds | Exceeds | 4 |
| Plaintiff | 6 | Fully Meets | Fully Meets | 3 |
| Comparator 3 | 5 | Exceeds | Fully Meets | 3 |
| Comparator 4 | 5 | Fully Meets | Fully Meets | 3 |

ECF No. 68.

---

[4] The lower the number of the Director's 9-box rating, the more positive the rating.

[5] This rating is on a scale of 1-5, with five being the most positive rating.

Parker then entered ratings as follows:

| Director | Character | Leading | Interpersonal Skills | Personal Capability | Focus on Results | Skills | Experience | Performance |
|---|---|---|---|---|---|---|---|---|
| Comparator 1 | 5 | 5 | 4 | 5 | 4 | 5 | 4 | Exceeds |
| Comparator 2 | 5 | 4 | 3 | 4 | 4 | 4 | 4 | Exceeds |
| Plaintiff | 4 | 1 | 2 | 2 | 3 | 3 | 3 | Meets, May Exceed |
| Comparator 3 | 4 | 5 | 4 | 4 | 3 | 3 | 3 | Meets, May Exceed |
| Comparator 4 | 4 | 3 | 3 | 3 | 4 | 3 | 4 | Exceeds |

ECF No. 68-3 at 2-3. Based on these ratings and the formula provided by AT&T, the final calculation of RIF/surplus rankings for each Director were:

| Director | Surplus Ranking |
|---|---|
| Comparator 1 | 4.40 |
| Comparator 2 | 4.00 |
| Plaintiff | 2.85 |
| Comparator 3 | 3.25 |
| Comparator 4 | 3.60 |

ECF No. 68-4. As Plaintiff had the lowest score, he was selected for the RIF/surplus. His position was eliminated; no one was hired to take his place.

Plaintiff was notified he had been selected for the RIF/surplus on May 22, 2016, but was allowed to remain employed until July 22, 2016. Plaintiff did not apply for any internal positions within the AT&T family through AT&T's job advertising system; however, he was contacted by an employee of Cricket Wireless (an AT&T company) who invited him to apply for a Market

Director position in Louisiana. ECF No. 46-4, Plaintiff dep. at 141-145. Plaintiff was interviewed for the position, but another applicant was chosen. *Id.* Plaintiff left the AT&T payroll on July 22, 2016. *Id.* at 130.

### iii. Analysis

#### 1. Failure to Hire Claim

As noted by the Magistrate Judge, Plaintiff's opposition to summary judgment did not address his substantive failure-to-hire claim. Defendant noted this on reply, argued Plaintiff had abandoned that claim, and the Magistrate Judge recommended summary judgment based on abandonment. ECF No. 70 at 12. Plaintiff has also failed to object to this finding of the Report. As the court finds no clear error on this issue, summary judgment is appropriate for the reasons stated by the Magistrate Judge. This claim is dismissed with prejudice.

#### 2. RIF/Surplus Claim

Although the Magistrate Judge sets forth three different bases for summary judgment on Plaintiff's RIF/surplus discrimination claim, this court need not address all three. Assuming *arguendo* a race plus sex claim is viable under Title VII, the court finds summary judgment appropriate based on the elements of performance and pretext.

Plaintiff objects to the Report's conclusion that he was not "performing at a level substantially equivalent to the lowest level of that in the group retained." ECF No. 74 at 4; *see also Corti v. Storage Tech Corp.*, 304 F.3d 336, 340 n.6 (4th Cir. 2002). Specifically, Plaintiff argues he was "at least at the same level as the two direct comparators who were retained" "with

8

the exception of the challenged and completely subjective 9-Box score."[6]  ECF No. 74 at 4.  He contends AT&T failed to consider his "long tenure" in the region, and notes his performance prior to the RIF was positive.  *Id.*

Plaintiff also objects to the Magistrate Judge's conclusion regarding pretext.  *Id.* at 5.  He argues AT&T instituted a new policy for the 2016 RIF in order to "achieve a surplus outcome that resulted in the separation of only Plaintiff and three other white male Level 3 Directors in Kent Mathy's region."  *Id.*[7]  He contends Parker's ratings of him were "blatantly punitive"; yet states Parker "admits that he was unsure who would be retained until he plugged his numbers into his matrix."  *Id.* at 4-5; *see also* ECF No. 46-7 at 26, Parker dep. at 82:5-10, 17-23 ("Q: At the time you get this form and are asked to fill it out, you knew who was going to be staying and who was going to be going, didn't you?  A: No. . . Q: So you're filling this out with absolutely no idea who this formula is going to produce as the surplus individuals?  A: I have a gut feeling for what's going to be the – but until you actually understand what the formula is, you don't know.").

The Fourth Circuit "has repeatedly found that there is no inference of discrimination when the employer adheres to neutral, established policies and procedures for a RIF."  *Andrezyski v. Kmart Corp.*, 358 F. Supp. 2d 511, 515 (W.D. Va. 2005) (*citing Dugan v. Albemarle Cnty. Sch. Bd.*, 293 F.3d 716, 722 (4th Cir. 2002) ("Even if there is evidence that the [defendant] erroneously or even purposely misapplied the RIF policy, it is not proof of unlawful discrimination.")); *Herold v. Hajoca Corp.*, 864 F.2d 317, 320 (4th Cir. 1988) (holding the District Court properly denied

---

[6] Plaintiff admits the 9-Box score was used in prior RIFs.  ECF Nos. 54 at 2; 54-2 at 12.

[7] The court notes Plaintiff failed to provide any citation to record evidence showing "only Plaintiff and three other white males" were separated in the 2016 RIF/surplus, or record evidence regarding context, such as rankings of other separated Directors under Kent Mathy.

directed verdict and JNOV motions when the plaintiff presented evidence the defendant had a policy of laying off workers with less seniority but failed to follow that policy in the challenged RIF). Further, it is within the employer's purview, in implementing a RIF, to analyze its employees' performance and determine, without utilizing any protected characteristic, who must be terminated. *See Rowe v. Marley Co.*, 233 F.3d 825, 831 (4th Cir. 2000) ("The decision to discharge [plaintiff] and retain [others] is the kind of business decision that we are reluctant to second-guess.").

AT&T had a clear policy regarding the 2016 RIF and followed that policy to determine Plaintiff was the lowest performer in his group. Although Plaintiff argues "neither the Court nor a jury has to blindly accept AT&T's numerical rankings derived from its sudden switch to an almost entirely subjective system," the court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions . . . ." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998). The court agrees Plaintiff has failed to establish his performance was better than a comparator Director who was retained, using AT&T's policy for the 2016 RIF as this court is required to do: AT&T made a business decision to implement a RIF, and Plaintiff scored the lowest of his peers.

Plaintiff's evaluations in 2014 and 2015 demonstrate his leadership, an important component of the 2016 RIF/surplus rakings, was average at best and lagged behind his peers by the 2015 evaluation. The 2014 evaluation assigned ratings for Business Goals: Meets Some and

Leadership Rating: Fully Meets, for an overall performance rating of Fully Meets.[8] ECF No. 58-9 at 3. The comments noted "I believe Scott can provide additional value by becoming more active in team discussions regardless of topic/channel . . . ." *Id.* The 2015 evaluation assigned ratings of Exceeds for Business Results and Meets Some for Leadership. ECF No. 58-10 at 3. Plaintiff's overall performance rating was Fully Meets. *Id.* While the business portion of the review was positive, Parker also noted "I would like to see Scott become more aggressive in identifying, and pursing opportunities to grow Go-Phone in our market and leverage his cross channel expertise to bring additional value to the overall leadership team." *Id.* His Comparators' 2015 ratings were as follows:[9]

| Director | 2015 Business Results | 2015 Leadership | 2015 Overall Rating |
|---|---|---|---|
| Plaintiff | Exceeds | Meets Some | Fully Meets |
| Comparator 2 | Far Exceeds | Exceeds | Exceeds |
| Comparator 3 | Fully Meets | Exceeds | Fully Meets |
| Comparator 4 | Fully Meets | Fully Meets | Fully Meets |

ECF Nos. 54-8, 54-9, 54-10. These ratings show Plaintiff had the lowest Leadership scores among the above Comparators on the 2015 Performance Evaluations and, as noted above in the Background section, scored the same in 2015 Overall Rating as two of his Comparators.

---

[8] The Overall Ratings were captured in the Surplus Spreadsheet, and the Business Results and Leadership are included in the Overall Ratings. *Compare* ECF No. 68 at 1-6, *with* ECF Nos. 58-9 and 58-10.

[9] The 2015 Performance Evaluation was not submitted for Comparator 1 from the charts on pages 6-7, *supra*.

11

Plaintiff also contends the "objective" sales "stack rankings" should have been considered in the 2016 RIF/surplus. ECF No. 54 at 3. However, AT&T has shown these were not included in the RIF/surplus because they would not assist in determining who the highest rated Directors were: at least one Comparator did not have responsibility for sales, and so was not included in the stack rankings at all. ECF No. 58-5, Esemuede dep. at 35:1-9. Further, while sales results were considered as part of Plaintiff's overall performance, they were not most important when evaluating Directors because sales results "have less of an impact because of the larger role the individual plays." ECF No. 54-4 at 11, Mathy dep. at 33:12-20.

Finally, the evidence shows Plaintiff had the lowest combined score of the Directors supervised by Parker at the time of the 2016 RIF/surplus. While some of the metrics revealed scores similar to his Comparators, Plaintiff had the lowest 9-Box score and lowest Leadership ratings in Leading, Interpersonal Skills, and Personal Capability. The total of all metrics, using the instructions and weight given by AT&T Human Resources, resulted in a combined score for Plaintiff of 2.85 under the 2016 RIF/surplus criteria, while the lowest comparator scored 3.25. ECF No. 68-4.

For the reasons above, Plaintiff has failed to show he was performing at a level substantially equivalent to the lowest in his group. In addition to performance, the court agrees Plaintiff's arguments fail to show pretext. Although Plaintiff now challenges the use of 9-Box ratings in the contested 2016 RIF/surplus, he admits 9-Box ratings were used in previous RIF/surpluses, in which he participated. ECF No. 46-4 at 7, Plaintiff dep. at 42:3-43:24. Plaintiff also assessed his own reports using the same criteria in the 2016 RIF/surplus. *Id.* at 11, Plaintiff dep. at 63:8-11. Further, the 9-Box ratings utilized in the 2016 RIF/surplus were prepared in the summer of 2015, well prior to the 2016 RIF/surplus decision, and were "pre-filled" by AT&T before the Surplus

Spreadsheet was sent to Parker for further input and calculation of the final RIF/surplus decision. ECF No. 46-7 at 25, Parker dep. at 75:18-23; ECF No. 46-6, Wood decl. at ¶¶ 5-6. Therefore, Parker would not have assigned a 9-Box rating to any of his Directors contemporaneously with the RIF/surplus decision. Plaintiff also contends if the court were to discount the 9-Box rating, he "was at least the same level as the two direct comparators who were retained." ECF No. 74 at 4. However, this is contradicted by the record, which shows that while three Directors (Plaintiff and two comparators) received a score of 3 for the 2015 Numerical Rating, Plaintiff received "Fully Meets" for his 2014 and 2015 Ratings, and only one of the comparators received identical ratings. ECF No. 68 at 3. The other comparator received an Exceeds for the 2014 rating and Fully Meets for the 2015 rating, ranking above Plaintiff. *Id.* When the 9-Box score is included, Plaintiff clearly received the lowest ratings of the comparators in the pre-filled criteria, before Parker became involved in the rankings. ECF No. 68. Finally, Plaintiff's assertion Parker "admit[ed] he was not sure who would be retained until he plugged his numbers into the matrix" belies the argument AT&T and Parker's assessment of Plaintiff and his co-directors was pretextual and predetermined.

The fact that AT&T changed the RIF/surplus qualification policies and procedures from one year to the next does not establish the 2016 policies were pretextual. This change, again, is a business decision the court will not second-guess. *See, e.g., Rowe*, 233 F.3d at 831; *Sagar v. Oracle Corp.*, 914 F. Supp. 2d 688, 695 (D. Md. 2012) ("It is well-established that in employment discrimination cases involving a reduction in force, it is not the court's duty to second guess the business judgment of defendant's employees and managers or the manner in which the reduction in force is carried out."). The court also disagrees AT&T applied its criteria in an inconsistent, arbitrary, or discriminatory matter. Plaintiff cites *Harris v. Blue Cross and Blue Shield of S.C.*, No. 3:04-2277, 2006 WL 2827704 (D.S.C Sept. 28, 2006) in support of this assertion; however, that

13

case is distinguishable on the facts. In *Harris*, the RIF policy stated the Vice President of Human Resources "shall handle on a case-by-case basis all matters pertaining to reductions-in-force, including the methodology by which persons will be selected." *Id.* at *12. The court held pretext was shown when the plaintiff, an "exceptional employee" was terminated over one with "substantial shortcomings" and the defendant failed to make any contemporaneous effort to document its reasons for doing so. *Id.* at *2. In this case, there is a clear, specific policy regarding what metrics would be used that involves both objective and subjective criteria, recorded contemporaneously with their determination (not to the RIF/surplus), by which Parker determined Plaintiff ranked considerably lower than any of his peers. This is not a case where the "claimed business judgment is so idiosyncratic or questionable that a factfinder could reasonably find that it is pretext for illegal discrimination." *See Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1168 (10th Cir. 1998).

For the above reasons, Plaintiff has failed to establish a prima facia case of discrimination and failed to show pretext. Therefore, summary judgment is appropriate as to his RIF/surplus discrimination claim.

### III. Conclusion

Having conducted a *de novo* review of the Report and underlying motion and related memoranda where necessary, and having fully considered Plaintiff's objections and AT&T's response, the court adopts the conclusions of the Report. Defendants' motion for summary judgment is **granted** as to all claims and this matter is dismissed with prejudice.

**IT IS SO ORDERED**.

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
March 20, 2019